# Exhibit A

1   John Du Wors, State Bar No. 233913
    john@newmanlaw.com
2   Leeor Neta, State Bar No. 233454
    leeor@newmanlaw.com
3   NEWMAN DU WORS LLP
4   1201 Third Avenue, Suite 1600
    Seattle, WA 98101
5   Telephone:    (206) 274-2800
    Facsimile:    (206) 274-2801
6

7   Attorneys for Defendants

8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
                   OAKLAND DIVISION
10

11  JOEL FINK, an individual, et al.,          No. **C13-3720**

12              Plaintiffs,              **NOTICE OF REMOVAL OF ACTION**
                                         **UNDER 28 U.S.C. SEC. 1441(B)**
13       v.                             **(DIVERSITY)**

14  ALTARE PUBLISHING, INC., a New Jersey
    corporation, et al.,
15

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28
                              1
                     **NOTICE OF REMOVAL**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Altare Publishing, Inc. hereby removes to this Court the state court action described below.

1.      On July 11, 2013, an action was commenced in the Superior Court of the State of California in and for the County of Santa Clara, entitled Joel Fink, et al., Plaintiffs, v. Altare Publishing, Inc., et al., Defendants, as case number 113-CV-249360. A copy of the complaint is attached hereto as **Exhibit 1**.

2.      The first date upon which Defendant Ryan Kowalski, a corporate representative of Defendant Altare Publishing, Inc., received a copy of the said complaint was July 18, 2013, when counsel for Plaintiff, Timothy Walton, forwarded a copy of the said complaint to Mr. Kowalski through the latter's counsel of record.

3.      All of the Defendants that have been properly joined and served agree to removal. 28 U.S.C. § 1446, subsection (b)(2)(A). *See* Declaration of Leeor Neta, dated August 12, 2013, attached hereto as **Exhibit 2**.

4.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441, subsection (b), in that (with exception of those Defendants that were fraudulently joined) it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      This action is appropriately assigned to the Oakland Division of this Court because at least five of the Plaintiffs appear to reside or do business in San Francisco County. *See* L.R. 3-2(d).

6.      Plaintiffs pray for liquidated damages in the amount of $986,000.

7.      Plaintiffs pray for punitive damages in the amount of $3,944,000.

8.      Plaintiff Joel Fink is a citizen of and an individual domiciled in the State of California.

9.      Plaintiff George Moreland is a citizen of and an individual domiciled in the State of California.

1       10.    Plaintiff Ken Green is a citizen of and an individual domiciled in the State of

2  California.

3       11.    Plaintiff Mildred Green is a citizen of and an individual domiciled in the State of

4  California.

5       12.    Plaintiff Jesse Brister is a citizen of and an individual domiciled in the State of

6  California.

7       13.    Plaintiff Julianna Hengfoss is a citizen of and an individual domiciled in the State

8  of California.

9       14.    Plaintiff Jamie Carper is a citizen of and an individual domiciled in the State of

10  California.

11       15.    Plaintiff Mario Osoteo is a citizen of and an individual domiciled in the State of

12  California.

13       16.    Plaintiff Daniel Barrett is a citizen of and an individual domiciled in the State of

14  California.

15       17.    Plaintiff Steve Falls is a citizen of and an individual domiciled in the State of

16  California.

17       18.    Plaintiff Serene Pritchett is a citizen of and an individual domiciled in the State of

18  California.

19       19.    Plaintiff Angela Kim Bridges is a citizen of and an individual domiciled in the

20  State of California.

21       20.    Plaintiff Kristina Kirby is a citizen of and an individual domiciled in the State of

22  California.

23       21.    Plaintiff Cathy Riley is a citizen of and an individual domiciled in the State of

24  California.

25       22.    Plaintiff Auria Styles is a citizen of and an individual domiciled in the State of

26  California.

27       23.    At both the time the state court action was filed and at the time of removal,

28  Defendant Altare Publishing, Inc. was and is a corporation incorporated under the laws of the

NOTICE OF REMOVAL

State of New Jersey and having its principal place of business in the State of New York. Altare Publishing, Inc. consents to removal. *See* **Exhibit 2**, ¶ 5.

24.     At both the time the state court action was filed and at the time of removal, Defendant "Vin DiCarlo, Inc." was and is a corporation incorporated under the laws of the Commonwealth of Massachusetts and having its principal place of business in the State of New Jersey. "Vin DiCarlo, Inc." consents to removal. *See* **Exhibit 2**, ¶ 5.

25.     At both the time the state court action was filed and at the time of removal, Defendant "Vin DiCarlo II, Inc." was and is a corporation incorporated under the laws of the State of New Jersey and having its principal place of business in the State of New Jersey. "Vin DiCarlo II, Inc." consents to removal. *See* **Exhibit 2**, ¶ 5.

26.     At both the time the state court action was filed and at the time of removal, Defendant Vin DiCarlo III, Inc. (sued as "Vin DiCarlo, Inc.") was and is a corporation incorporated under the laws of the State of New Jersey and having its principal place of business in the State of New Jersey. Vin DiCarlo III, Inc. consents to removal. *See* **Exhibit 2**, ¶ 5.

27.     At both the time the state court action was filed and at the time of removal, Defendant "DiCarlo Coaching" was and is a New York limited liability company. The sole member of "DiCarlo Coaching" is Defendant Ryan Kowalski. Ryan Kowalski is a citizen of and an individual domiciled in the State of New Jersey. Thus, "DiCarlo Coaching" is not a citizen of California for purposes of diversity jurisdiction. "DiCarlo Coaching" and Ryan Kowalski consent to removal. *See* **Exhibit 2**, ¶ 5.

28.     At both the time the state court action was filed and at the time of removal, Defendant "DiCarlo Coaching LLC" was and is a Wyoming limited liability company. The sole member of "DiCarlo Coaching LLC" is Defendant Ryan Kowalski. Ryan Kowalski is a citizen of and an individual domiciled in the State of New Jersey. Thus, "DiCarlo Coaching LLC" is not a citizen of California for purposes of diversity jurisdiction. "DiCarlo Coaching LLC" and Ryan Kowalski consent to removal. *See* **Exhibit 2**, ¶ 5.

29.     At both the time the state court action was filed and at the time of removal, Defendant "Vin DiCarlo" was and is a pseudonym for Defendant Ryan Kowalski. Ryan

4
**NOTICE OF REMOVAL**

1    Kowalski is a citizen of and an individual domiciled in the State of New Jersey. "Vin DiCarlo"

2    and Ryan Kowalski consent to removal. *See* **Exhibit 2**, ¶ 5.

3         30.    At both the time the state court action was filed and at the time of removal,

4    Defendant Ryan Dennis Kowalski was and is a citizen of and an individual domiciled in the State

5    of New Jersey. Ryan Dennis Kowalski consents to removal. *See* **Exhibit 2**, ¶ 5.

6         31.    At both the time the state court action was filed and at the time of removal,

7    Defendant Kristen Sara Kowalski was and is a citizen of and an individual domiciled in the State

8    of New Jersey. Kristen Sara Kowalski consents to removal. *See* **Exhibit 2**, ¶ 5.

9         32.    At both the time the state court action was filed and at the time of removal,

10   Defendant Gerald M. Gresko was and is a citizen of and an individual domiciled in the

11   Commonwealth of Pennsylvania. Gerald M. Gresko consents to removal. *See* **Exhibit 2**, ¶ 2.

12        33.    At both the time the state court action was filed and at the time of removal,

13   Defendant Judith A. Gresko was and is a citizen of and an individual domiciled in the

14   Commonwealth of Pennsylvania. Judith A. Gresko consents to removal. *See* **Exhibit 2**, ¶ 2.

15        34.    At both the time the state court action was filed and at the time of removal,

16   Defendant Namecheap, Inc. was and is a corporation incorporated under the laws of the State of

17   Delaware and having its principal place of business in Kharkov, Ukraine. *See Hertz Corp. v.*

18   *Friend*, 130 S.Ct. 1181, 1186 (2010) (a corporation's "principal place of business" is "the place

19   where a corporation's high level officers direct, control, and coordinate the corporation's

20   activities.") Namecheap, Inc.'s consent to removal is not required because it has not yet been

21   served in the state court action. *See Republic W. Ins. Co. v. Int'l. Ins. Co.*, 765 F.Supp. 628, 629

22   (N.D. Cal. 1991). Even so, Namecheap, Inc. has consented to removal. *See* **Exhibit 2**, ¶ 4. Even

23   if it is found that Namecheap, Inc. is based in California, Namecheap, Inc. was fraudulently

24   joined because there is no possibility that Plaintiffs can prove a cause of action against

25   Namecheap, Inc. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998).

26   Namecheap, Inc. is a mere domain name registrar for some of the domain names owned by one

27   or more of the Defendants. The complaint makes no effort to explain how Namecheap, Inc. even

28   knew about the conduct at issue. *See* **Exhibit 1**. Namecheap, Inc. is a "sham" defendant added

1   for the sole intent of preventing diversity. *See Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d

2   1261, 1266 (9th Cir. 1999).

3        35.    At both the time the state court action was filed and at the time of removal,

4   Defendant Donald G. McAllister was and is a citizen of and an individual domiciled in the State

5   of California. Donald G. McAllister's consent to removal is not required because he has not yet

6   been served in the state court action. *See Republic W. Ins. Co.*, 765 F.Supp. at 629. Even so,

7   Donald G. McAllister has consented to removal. *See* **Exhibit 2**, ¶ 3. And Donald G. McAllister

8   was fraudulently joined because there is no possibility that Plaintiffs can prove a cause of action

9   against Donald G. McAllister. *Ritchey*, 139 F.3d at 1318-19. The complaint makes no effort to

10  explain how Donald G. McAllister even knew about the conduct at issue. *See* **Exhibit 1**. Donald

11  G. McAllister is a "sham" defendant added for the sole intent of preventing diversity. *See Prize*

12  *Frize*, 167 F.3d at 1266.

13       36.    At both the time the state court action was filed and at the time of removal,

14  Defendant Sherry D. McAllister was and is a citizen of and an individual domiciled in the State

15  of California. Sherry D. McAllister's consent to removal is not required because she has not yet

16  been served in the state court action. *See Republic W. Ins. Co.*, 765 F.Supp. at 629. Even so,

17  Sherry D. McAllister has consented to removal. *See* **Exhibit 2**, ¶ 3. And Sherry D. McAllister

18  was fraudulently joined because there is no possibility that Plaintiffs can prove a cause of action

19  against Sherry D. McAllister. *Ritchey*, 139 F.3d at 1318-19. The complaint makes no effort to

20  explain how Sherry D. McAllister even knew about the conduct at issue. *See* **Exhibit 1**. Sherry

21  D. McAllister is a "sham" defendant added for the sole intent of preventing diversity. *See Prize*

22  *Frize*, 167 F.3d at 1266.

23  //

24  //

25

26

27

28

1    37.    Based on the foregoing, complete diversity of citizenship exists.

2

3    Respectfully submitted this 12th day of August 2013.

4

5                              **NEWMAN DU WORS LLP**

6

7                              s/ Leeor Neta
8                              Leeor Neta, State Bar No. 233454
                               John Du Wors, State Bar No. 233913
9                              Attorneys for Defendants
                               Altare Publishing, Inc.; "Vin DiCarlo, Inc.";
10                             "Vin DiCarlo II, Inc."; Vin DiCarlo III, Inc. (sued
                               as "Vin DiCarlo, Inc."); "DiCarlo Coaching";
11                             "DiCarlo Coaching LLC"; "Vin DiCarlo"; "Ryan
                               Dennis Kowalski"; "Kristen Sara Kowalski"
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT - 1



1   Timothy J. Walton (State Bar No. 184292)
2   Jim C. Twu (State Bar No. 175032)
    WALTON TWU LLP
3   9515 Soquel Drive Suite #207
    Aptos, CA 95003
4   Phone: (831) 685-9800
    Fax: (650) 618-8687
5

6   Daniel L. Balsam (State Bar No. 260423)
    THE LAW OFFICES OF DANIEL BALSAM
7   2912 Diamond Street #218
    San Francisco, CA 94131
8   Phone: (415) 869-2873
    Fax: (415) 869-2873
9

10

11  *Attorneys for Plaintiffs*
    JOEL FINK *et al.*

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14          **COUNTY OF SANTA CLARA (UNLIMITED JURISDICTION)**

15

16  JOEL FINK, an individual,                    Case No.
    GEORGE MORELAND, an individual,
17  KEN GREEN, an individual,                        **1 1 3 C V 2 4 9 3 6 0**
    MILDRED GREEN, an individual,
18  JESSE BRISTER, an individual,                **COMPLAINT FOR DAMAGES**
19  JULIANNA HENGFOSS, an individual,
    JAMIE CARPER, an individual,                 1. **VIOLATIONS OF CALIFORNIA**
20  MARIO OSOTEO, an individual,                    **RESTRICTIONS ON UNSOLICITED**
21  DANIEL BARRETT, an individual,                  **COMMERCIAL E-MAIL**
    STEVE FALLS, an individual,                     **ADVERTISERS (Cal. Bus. & Prof.**
22  SERENE PRITCHETT, an individual,                **Code § 17529.5)**
23  ANGELA KIM BRIDGES, an individual,           2. **VIOLATIONS OF CALIFORNIA**
    KRISTINA KIRBY, an individual,                  **RESTRICTIONS ON FRAUD (Cal.**
24  CATHY RILEY, an individual, and                 **Civ. Code § 1572)**
25  AURIA STYLES, an individual,

26                  Plaintiffs,

27
          vs.
28

29  ALTARE PUBLISHING INC., a New Jersey
    corporation,
30
    VIN DICARLO, INC., a Massachusetts
31  corporation,

                                        1
                        **COMPLAINT FOR DAMAGES**

VIN DICARLO II INCORPORATED, a New
Jersey corporation,
VIN DICARLO INC., a New Jersey
corporation,
DICARLO COACHING, a business entity of
unknown organization doing business in New
York,
DICARLO COACHING, LLC, a Wyoming
limited liability company,
VIN DICARLO, an individual,
RYAN DENNIS KOWALSKI, an individual,
KRISTEN SARA KOWALSKI, an individual,
GERALD M. GRESKO, an individual,
JUDITH A. GRESKO, an individual,
NAMECHEAP, INC., a Delaware corporation,
DONALD G. MCALLISTER, an individual,
SHERRY D. MCALLISTER, an individual, and
DOES 1 – 100,

Defendants.

Plaintiffs JOEL FINK, GEORGE MORELAND, KEN GREEN, MILDRED GREEN, JESSE
BRISTER, JULIANNA HENGFOSS, JAMIE CARPER, MARIO OSOTEO, DANIEL
BARRETT, STEVE FALLS, SERENE PRITCHETT, ANGELA KIM BRIDGES, KRISTINA
KIRBY, CATHY RILEY, and AURIA STYLES file this Complaint for causes of action against
Defendants ALTARE PUBLISHING INC., a New Jersey corporation, VIN DICARLO, INC., a
Massachusetts corporation, VIN DICARLO II INCORPORATED, a New Jersey corporation,
VIN DICARLO INC., a New Jersey corporation, DICARLO COACHING, a business entity of
unknown organization doing business in New York, DICARLO COACHING, LLC, a Wyoming
limited liability company, VIN DICARLO, an individual, RYAN DENNIS KOWALSKI, an
individual, KRISTEN SARA KOWALSKI, an individual, GERALD M GRESKO, an individual,
JUDITH A. GRESKO, an individual, NAMECHEAP, INC., a Delaware corporation, DONALD
G. MCALLISTER, an individual, SHERRY D. MCALLISTER, an individual, and DOES 1 –
100, inclusive, and allege as follows:

## I. SUMMARY OF THE COMPLAINT

1.    Plaintiffs JOEL FINK, GEORGE MORELAND, KEN GREEN, MILDRED GREEN,
JESSEE BRISTER, JULIANNA HENGFOSS, JAMIE CARPER, MARIO OSOTEO, DANIEL

WALTON TWU LLP
9515 Soquel Drive Suite #287 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)918-6687

WALTON TWU LLP

9515 Soquel Drive Suite #2017 • Aptos, CA 95003

PHONE (831)685-9800 • FAX (650)618-8587

1    BARRETT, STEVE FALLS, SERENE PRITCHETT, ANGELA KIM BRIDGES, KRISTINA

2    KIRBY, CATHY RILEY, and AURIA STYLES ("Plaintiffs") bring this action against

3    Defendants for sending and advertising in at least Nine Hundred Eighty Six (986) unlawful

4    Unsolicited Commercial Email ("UCE" or "spams") messages sent to Plaintiffs since January 1,

5    2012.

6    2.      The spams are email advertising in violation of Cal. Business & Professions Code

7    § 17529 *et seq.* ("Section 17529.5").

8    3.      The headers of the spams contain or are accompanied by numerous elements of falsified

9    and/or misrepresented header information, in violation of Cal. Business & Professions Code

10   § 17529.5.

11   4.      The products advertised in the spams are misrepresented, as is the cost to the consumer.

12   5.      This Court should award actual damages and statutory damages of $1,000 per spam, as

13   provided by Cal. Business & Professions Code § 17529.5, and not consider any reduction,

14   because Defendants failed to implement reasonably effective systems designed to prevent the

15   sending of unlawful spam in violation of the statute.

16   6.      Plaintiffs are informed and believe and thereon allege that Defendants' actions in sending

17   and advertising in these unlawful spams were knowing, willful, and blatant, and *not* "clerical"

18   mistakes.

19                                    **II. PARTIES**

20   A. **Plaintiffs**

21        *1. Plaintiff JOEL FINK*

22   7.      Plaintiff JOEL FINK ("FINK") is now, and at all times relevant herein has been, an

23   individual residing in the State of California.

24   8.      Plaintiff FINK owns and at all relevant times herein owned a computer with an Internet

25   connection.

26   9.      Plaintiff FINK ordinarily uses this computer to access his email accounts. This computer

27   is located in the State of California.

28   10.     Plaintiff FINK received at least One Hundred Ninety Five (195) spams over his Internet

29   Service Provider's equipment and email service provider's equipment, all located in the State of

30   California, and expects to receive more even after filing this Complaint. This does not include

31   Eighteen (18) email messages sent after Plaintiff FINK purchased the advertised product.

### 2. *Plaintiff GEORGE MORELAND*

11.     Plaintiff GEORGE MORELAND ("MORELAND") is now, and at all times relevant herein has been, an individual residing in the State of California.

12.     Plaintiff MORELAND owns and at all relevant times herein owned a computer with an Internet connection.

13.     Plaintiff MORELAND ordinarily uses this computer to access his email accounts. This computer is located in Santa Clara County, in the State of California.

14.     Plaintiff MORELAND received at least One Hundred Fifty Three (153) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 3. *Plaintiff KEN GREEN*

15.     Plaintiff KEN GREEN ("GREEN") is now, and at all times relevant herein has been, an individual residing in the State of California.

16.     Plaintiff GREEN owns and at all relevant times herein owned a computer with an Internet connection.

17.     Plaintiff GREEN ordinarily uses this computer to access his email accounts. This computer is located in the State of California.

18.     Plaintiff GREEN received at least One (1) spam over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 4. *Plaintiff MILDRED GREEN*

19.     Plaintiff MILDRED GREEN ("MILDRED") is now, and at all times relevant herein has been, an individual residing in the State of California.

20.     Plaintiff MILDRED owns and at all relevant times herein owned a computer with an Internet connection.

21.     Plaintiff MILDRED ordinarily uses this computer to access her email accounts. This computer is located in the State of California.

22.     Plaintiff MILDRED received at least Six (6) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8687

**WALTON TWU LLP**
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-4687

### 5. *Plaintiff JESSE BRISTER*

23.    Plaintiff JESSE BRISTER ("BRISTER") is now, and at all times relevant herein has been, an individual residing in the County of Santa Cruz, in the State of California.

24.    Plaintiff BRISTER owns and at all relevant times herein owned a computer with an Internet connection.

25.    Plaintiff BRISTER ordinarily uses this computer to access his email accounts. This computer is located in the State of California.

26.    Plaintiff BRISTER received at least One Hundred Ninety-Nine (199) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 6. *Plaintiff JULIANNA HENGFOSS*

27.    Plaintiff JULIANNA HENGFOSS ("HENGFOSS") is now, and at all times relevant herein has been, an individual residing in the State of California.

28.    Plaintiff HENGFOSS owns and at all relevant times herein owned a computer with an Internet connection.

29.    Plaintiff HENGFOSS ordinarily uses this computer to access her email accounts. This computer is located in the State of California.

30.    Plaintiff HENGFOSS received at least Thirty (30) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 7. *Plaintiff JAMIE CARPER*

31.    Plaintiff JAMIE CARPER ("CARPER") is now, and at all times relevant herein has been, an individual residing in the State of California.

32.    Plaintiff CARPER owns and at all relevant times herein owned a computer with an Internet connection.

33.    Plaintiff CARPER ordinarily uses this computer to access his email accounts. This computer is located in the State of California.

34.    Plaintiff CARPER received at least Thirty One (31) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

WALTON TWU LLP
9515 Roqui Drive Suite #207 – Aptos, CA 95003
PHONE (831)685-9800 ● FAX (650)618-8687

### 8. *Plaintiff MARIO OSOTEO*

35.     Plaintiff MARIO OSOTEO ("OSOTEO") was an individual residing in the State of California at all times that he received the spams at issue in this action.  OSOTEO is now an individual residing in the State of Florida.

36.     Plaintiff OSOTEO owns and at all relevant times herein owned a computer with an Internet connection.

37.     Plaintiff OSOTEO ordinarily uses this computer to access his email accounts.  This computer was located in the State of California during the relevant times herein.

38.     Plaintiff OSOTEO received at least Twenty (26) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California.

### 9. *Plaintiff DANIEL BARRETT*

39.     Plaintiff DANIEL BARRETT ("BARRETT") is now, and at all times relevant herein has been, an individual residing in the State of California.

40.     Plaintiff BARRETT owns and at all relevant times herein owned a computer with an Internet connection.

41.     Plaintiff BARRETT ordinarily uses this computer to access his email accounts.  This computer is located in the State of California.

42.     Plaintiff BARRETT received at least Twenty Nine (29) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 10. *Plaintiff STEVE FALLS*

43.     Plaintiff STEVE FALLS ("FALLS") is now, and at all times relevant herein has been, an individual residing in the State of California.

44.     Plaintiff FALLS owns and at all relevant times herein owned a computer with an Internet connection.

45.     Plaintiff FALLS ordinarily uses this computer to access his email accounts.  This computer is located in the State of California.

46.     Plaintiff FALLS received at least Three (3) spams over his Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

6
COMPLAINT FOR DAMAGES

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 •FAX (650)618-8687

### 11. Plaintiff SERENE PRITCHETT

47.     Plaintiff SERENE PRITCHETT ("PRITCHETT") is now, and at all times relevant herein has been, an individual residing in the State of California.

48.     Plaintiff PRITCHETT owns and at all relevant times herein owned a computer with an Internet connection.

49.     Plaintiff PRITCHETT ordinarily uses this computer to access her email accounts.  This computer is located in the State of California.

50.     Plaintiff PRITCHETT received at least Seventy One (71) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 12. Plaintiff ANGELA KIM BRIDGES

51.     Plaintiff ANGELA KIM BRIDGES ("BRIDGES") is now, and at all times relevant herein has been, an individual residing in the State of California.

52.     Plaintiff BRIDGES owns and at all relevant times herein owned a computer with an Internet connection.

53.     Plaintiff BRIDGES ordinarily uses this computer to access her email accounts.  This computer is located in the State of California.

54.     Plaintiff BRIDGES received at least Forty One (41) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 13. Plaintiff KRISTINA KIRBY

55.     Plaintiff KRISTINA KIRBY ("KIRBY") is now, and at all times relevant herein has been, an individual residing in the State of California.

56.     Plaintiff KIRBY owns and at all relevant times herein owned a computer with an Internet connection.

57.     Plaintiff KIRBY ordinarily uses this computer to access her email accounts.  This computer is located in the State of California.

58.     Plaintiff KIRBY received at least Sixty One (61) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

COMPLAINT FOR DAMAGES

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-8687

### 14. Plaintiff CATHY RILEY

59.     Plaintiff CATHY RILEY ("RILEY") is now, and at all times relevant herein has been, an individual residing in the State of California.

60.     Plaintiff RILEY owns and at all relevant times herein owned a computer with an Internet connection.

61.     Plaintiff RILEY ordinarily uses this computer to access her email accounts.  This computer is located in the State of California.

62.     Plaintiff RILEY received at least One Hundred Eleven (111) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

### 15. Plaintiff AURIA STYLES

63.     Plaintiff AURIA STYLES ("STYLES") is now, and at all times relevant herein has been, an individual residing in the State of California.

64.     Plaintiff STYLES owns and at all relevant times herein owned a computer with an Internet connection.

65.     Plaintiff STYLES ordinarily uses this computer to access her email accounts.  This computer is located in the State of California.

66.     Plaintiff STYLES received at least Twenty Nine (29) spams over her Internet Service Provider's equipment and email service provider's equipment, all located in the State of California, and expects to receive more even after filing this Complaint.

//

//

//

### B. Defendants

### 1. Defendant ALTARE PUBLISHING INC.

67.     Plaintiffs are informed and believe and thereon allege that Defendant ALTARE PUBLISHING INC. ("ALTARE") was at all times relevant herein, a limited liability company with a principal place of business in New York City, New York.

68.     Plaintiffs are informed and believe and thereon allege that ALTARE does business as DiCarlo Coaching, Pandora's Box, The Attraction Code, No Flakes!, and perhaps other fictitious business names.

### 2. *Defendant VIN DICARLO INC.*

69.    Plaintiffs are informed and believe and thereon allege that Defendant VIN DICARLO, INC. was at all times relevant herein, a Massachusetts corporation with a principal place of business in Union City, New Jersey.

### 3. *Defendant VIN DICARLO II INCORPORATED*

70.    Plaintiffs are informed and believe and thereon allege that Defendant VIN DI CARLO II INCORPORATED was at all times relevant herein, a New Jersey corporation with a principal place of business in Union City, New Jersey.

### 4. *Defendant VIN DICARLO, INC.*

71.    Plaintiffs are informed and believe and thereon allege that Defendant VIN DICARLO, INC. was at all times relevant herein, a New Jersey corporation with a principal place of business in Union City, New Jersey.

### 5. *Defendant DICARLO COACHING*

72.    Plaintiffs are informed and believe and thereon allege that Defendant DICARLO COACHING was at all times relevant herein, a business entity of unknown organization with a principal place of business in New York City, New York.

73.    Plaintiffs are informed and believe and thereon allege that DICARLO COACHING does business as DiCarlo Coaching, Pandora's Box, The Attraction Code, No Flakes!, and, perhaps, other fictitious business names.

//
//
//

### 6. *Defendant DICARLO COACHING, LLC*

74.    Plaintiffs are informed and believe and thereon allege that Defendant DICARLO COACHING, LLC was at all times relevant herein, a Wyoming limited liability company with a principal place of business in Union City, New Jersey.

### 7. *Defendant VIN DICARLO*

75.    Plaintiffs are informed and believe and thereon allege that Defendant VIN DICARLO ("DICARLO") was at all times relevant herein, an individual believed to be residing in the state of New York.

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-6037

76.     Plaintiffs are informed and believe and thereon allege that Defendant VIN DICARLO does business as DiCarlo Coaching, Pandora's Box, The Attraction Code, No Flakes!, and, perhaps, other fictitious business names; and is the driving force behind the actions of all defendants.

77.     Plaintiffs are informed and believe and thereon allege that Defendant DICARLO is responsible for advertising in all of the spams at issue in this action.

78.     Plaintiffs are informed and believe and thereon allege that "Vin DiCarlo" may be an alias for Defendant RYAN DENNIS KOWALSKI.

### 8. Defendant RYAN DENNIS KOWALSKI

79.     Plaintiffs are informed and believe and thereon allege that Defendant RYAN DENNIS KOWALSKI was at all times relevant herein, an individual believed to be residing in the state of Connecticut.

80.     Plaintiffs are informed and believe and thereon allege that Defendant RYAN DENNIS KOWALSKI was at all times relevant herein an owner, officer and/or director of one or more of the various business entity defendants.

### 9. Defendant KRISTEN SARA KOWALSKI

81.     Plaintiffs are informed and believe and thereon allege that Defendant KRISTEN SARA KOWALSKI was at all times relevant herein, an individual believed to be residing in the state of Connecticut.

82.     Plaintiffs are informed and believe and thereon allege that Defendant KRISTEN SARA KOWALSKI was at all times relevant herein an owner, officer and/or director of one or more of the various business entity defendants.

### 10. Defendant GERALD M. GRESKO

83.     Plaintiffs are informed and believe and thereon allege that Defendant GERALD M. GRESKO was at all times relevant herein, an individual believed to be residing in the state of Pennsylvania.

84.     Plaintiffs are informed and believe and thereon allege that Defendant GERALD M. GRESKI was at all times relevant herein an owner, officer and/or director of one or more of the various business entity defendants.

WALTON TWU LLP
9515 Soquel Drive Suite #2017 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-6587

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-8687

1  **11. _Defendant JUDITH A. GRESKO_**

2  85.　Plaintiffs are informed and believe and thereon allege that Defendant JUDITH A.

3  GRESKO was at all times relevant herein, an individual believed to be residing in the state of

4  Pennsylvania.

5  86.　Plaintiffs are informed and believe and thereon allege that Defendant JUDITH A.

6  GRESKO was at all times relevant herein an owner, officer and/or director of one or more of the

7  various business entity defendants.

8  **12. _Defendant NAMECHEAP, INC_**

9  87.　Plaintiff is informed and believes and thereon alleges that Defendant NAMECHEAP,

10  INC. ("NAMECHEAP") was at all times relevant herein, a Delaware Corporation with a

11  principal place of business in Los Angeles, California, but is not properly registered to do

12  business within the State of California.

13  88.　Plaintiff is informed and believes and thereon alleges that Defendant NAMECHEAP,

14  INC. operates under the fictitious business names of "NameCheap" and "WhoisGuard."

15  89.　Plaintiff is informed and believes and thereon alleges that NAMECHEAP did not

16  properly register the fictitious business names "NameCheap" and "WhoisGuard" with the Los

17  Angeles County Registrar-Recorder/County Clerk.

18  90.　Plaintiffs are informed and believe and thereon allege that some of the email messages at

19  issue in this action were sent from the domain name PANDORASBOXVIDEO.COM, which is

20  registered to NAMECHEAP doing business as "WhoisGuard."

21  //

22  //

23  //

24  **13. _Defendant DONALD G. MCALLISTER_**

25  91.　Plaintiffs are informed and believe and thereon allege that Defendant DONALD G.

26  MCALLISTER ("DON MCALLISTER") was at all times relevant herein, an individual residing

27  in California.

28  92.　Plaintiffs are informed and believe and thereon allege that Defendant DON

29  MCALLISTER does business as "ONLINE ACADEMIA."

30

31

WALTON TWU LLP
9515 Soquel Drive, Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)518-8587

93.  Plaintiffs are informed and believe and thereon allege that the domain name ONLINE-ACADEMIA.COM is registered to "ONLINE ACADEMIA," with an address in San Jose, California, within the County of Santa Clara.

94.  Plaintiffs are informed and believe and thereon allege that DON MCALLISTER sent or caused to be sent one or more spams at issue in this action on or about June 28, 2012.

### 14.  Defendant *SHERRY D. MCALLISTER*

95.  Plaintiffs are informed and believe and thereon allege that Defendant SHERRY D. MCALLISTER ("SHERRY MCALLISTER") was at all times relevant herein, an individual residing in California.

96.  Plaintiffs are informed and believe and thereon allege that Defendant SHERRY D. MCALLISTER does business as "ONLINE ACADEMIA."

97.  Plaintiffs are informed and believe and thereon allege that the domain name ONLINE-ACADEMIA.COM is registered to "ONLINE ACADEMIA," with an address in San Jose, California, within the County of Santa Clara.

98.  Plaintiffs are informed and believe and thereon allege that SHERRY D. MCALLISTER sent or caused to be sent one or more spams at issue in this action on or about June 28, 2012.

### 14.  *DOE Defendants*

99.  Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

100.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complain.

101.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator.

102.  When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

1    103.    Plaintiffs allege that all Defendants are jointly and severally liable for all injuries and

2    damages of which Plaintiffs complain.

3    ### III. JURISDICTION AND VENUE

4    104.    This Court has jurisdiction over the Action because all Plaintiffs and at least one

5    Defendant are located in California, and this is a civil action wherein the matter in controversy,

6    exclusive of interest and costs, exceeds $25,000.

7    105.    Venue is proper in this Court pursuant to Code of Civil Procedure § 395.5 because at

8    least one Plaintiff received Defendants' unlawful spams and was damaged in Santa Clara County

9    and at least one Defendant resides or does business in Santa Clara County.

10    ### IV. NEARLY A THOUSAND UNLAWFUL SPAMS

11    106.    Since at least January 1, 2012, Defendants sent and/or advertised in at least Nine

12    Hundred Eighty Six (986) unsolicited commercial email ("UCE" or "spam") advertisements to

13    Plaintiffs.

14    107.    The spam shown on page 14 is a representative sample.

15    108.    The spams' headers include third parties' domain names without permission.

16    109.    The spams' headers include misleading and/or false Subject Lines.

17    110.    The spams' headers include misrepresented From Names.

18    111.    The spams' headers include sending domain names that were proxy-registered, which

19    misrepresented who really sent the spams.

20    112.    The spams' headers include falsified Send Dates.

21    113.    Defendants fraudulently advertised products.

22    114.    Plaintiffs are informed and believe and thereon allege that the falsified and/or

23    misrepresented content in the spams at issue in this action constitute *material* falsity and

24    deception, and represent *willful* and *deliberate* acts, not mere "clerical" mistakes.

25

26

27

28

29

30

31

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-8687

13
**COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8687

**Subject:**  Single guys: make any girl want to f&*k you? (new video)

**From:**  Watch this video (fmrjhzo@yahoo.com)

**To:**  [REDACTED]

**Date:**  Thursday, July 4, 2013 12:24 AM

This video gives you the keys to the "desire center" of any woman's mind.

When you watch the shocking free video you will discover

-1 Weird Trick For Making Any Woman Wet
-3 Magic Words That Make Women Horny
-How To Use Innocent Questions To Make Her Fall In Love With You

And more....

Watch The Video Now
http://t.co/JsBxhMC8d3

After you watch the video you will never get rejected again and you will
never have to spend another night alone again.

Because you'll know EXACTLY how to get any woman out of her panties
and into your bed.

But the video is being taken down tonight at midnight.

So you have to watch IMMEDIATELY

Watch The Video Now
http://t.co/aiANVYZioY

To stop receiving our offers click here
http://t.co/tDRvsJv8Rw

or write to:

4447 North Central Expressway, Suite 110 PMB 406 Dallas, Texas 75205

*Sample Spam*

14

**COMPLAINT FOR DAMAGES**

**A.  The Emails at Issue are "Spams"**

115.    The emails at issue are "commercial email advertisements"[1] because they were initiated for the purpose of advertising and promoting the sale of goods.

116.    The emails are "unsolicited commercial email advertisements"[2] because no Plaintiff ever gave any Defendant "direct consent"[3] to send him or her commercial emails, nor did any Plaintiff have a "preexisting or current business relationship"[4] with any Defendant.

117.    Defendants sent and/or advertised in more than Nine Hundred Eighty Six (986) spams that Plaintiffs received at their "California email addresses."[5]

118.    Plaintiffs are informed and believe and thereon allege that Defendants sent and/or advertised in thousands or even millions of similar spams received by other California residents.

119.    Plaintiffs' email addresses play no part in determining whether or not the emails have falsified, misrepresented, forged, misleading, or otherwise deceptive information contained in or accompanying the email headers.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(c).

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative."  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []"  Bus. & Prof. Code § 17529.1(*l*).

[5] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8887

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-4687

1  120.    Plaintiffs' email addresses are confidential for numerous reasons, including, but not

2  limited to, avoiding the risk of retaliation by "mail bombing" (sending massive amounts of email

3  to Plaintiffs' email addresses), "joe jobbing" (sending unlawful email using Plaintiffs' email

4  addresses in the Sender Email Address field as a means of harassment), or sharing of Plaintiffs'

5  email addresses with other unknown parties who might in turn send spam or mail bombs to

6  Plaintiffs or as if from Plaintiffs.

7  121.    With regard to many of the spams at issue in this action, a spam recipient who clicks the

8  link in the spam causes his or her computer to launch an Internet browser that redirects through a

9  web page (not the home page) at *LinkedIn.com*.

10  122.    Defendants' spams violate LinkedIn's policies in at least two ways:

11  • *LinkedIn.com* prohibits the use of its services for spamming. *See* LinkedIn

12  User Agreement § 10(B)(8)(f), *available at* http://www.linkedin.com/legal/

13  user-agreement (last visited July 1, 2013).

14  • *LinkedIn.com* prohibits linking to any page other than the home page. *Id.* at

15  § 10(B)(17).

16  123.    After redirecting through *LinkedIn.com*, the spam recipient lands on any one of numerous

17  websites, which all appear to be mirror-images of each other.

18  124.    The landing web page displays the text "Watch This Short Controversial Video Before It

19  Gets BANNED" and an animated video.

20  125.    Meanwhile, the landing web page plays the following audio message:

21  The question I'm about to ask you might piss you off.  It might shock you, it
22  might make you uncomfortable, but it's for your own damn good, so answer it
   honestly.  Ready?  When was the last time you got laid?  Seriously.  When was
23  the last time you put your d*ck in a girl's p*ssy and f*cked her without paying for
24  it?. . . .

25  **B.  Spams That Include Third Parties' Domain Names Without Permission Violate**
   **Business & Professions Code § 17529.5(a)(1)**
26
27  126.    Section 17529.5(a)(1) prohibits spams that include third parties' domain names without

28  permission of the third parties.

29

30  state; 3) An e-mail address furnished to a resident of this state."  Bus. & Prof. Code
31  § 17529.1(b).

127.    Many of the spams at issues contain third parties' domain names without permission of the third parties.

128.    For example, Plaintiff KRISTINA KIRBY received a spam on June 6, 2013 that appears to have been sent from the email address *vccxiut@yahoo.com*.

129.    Plaintiffs are informed and believe and thereon allege that Yahoo! Inc., owner of the *yahoo.com* domain name, has a strict anti-spam policy that prohibits

> Using or causing to be used Yahoo! computer systems to facilitate the transmission of unsolicited or unauthorized material. This includes any promotional materials, URLs, "junk mail," "chain letters," "pyramid schemes," or any other form of unauthorized solicitation that you may upload, post, email, transmit, or otherwise make available.

Yahoo! Universal Anti-Spam Policy, *available at* http://info.yahoo.com/legal/us/yahoo/guidelines/spam/ (last visited June 19, 2013).

130.    Therefore, Yahoo! Inc. could not have and did not authorize Defendants or anyone else to use its domain name *yahoo.com* in conjunction with this spam.

131.    On the other hand, *if* the spam Plaintiff KRISTINA KIRBY received on June 6, 2013 was not actually sent from the email address *vccxiut@yahoo.com*, then the headers include falsified/forged information, which violates Business & Professions Code Section 17529.5(a)(2).

C. **Spams With Generic From Names Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

132.    Section 17529.5(a)(2) prohibits misrepresented information in email headers.

133.    Plaintiffs are informed and believe and thereon allege that the text in the "From Name" field (part of the email headers) in the instant spams misrepresents *who* the spams are from.

134.    Plaintiffs do not insist on any *particular* label (e.g., "Altare Publishing," "Altare Publishing Inc.," "Vin DiCarlo Inc.," etc.) in the From Name field. Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent *who* is advertising in the email. The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and date. Therefore, even *if* the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email.

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-8687

135.    Here, the From Names – "Watch the Video," "Female Seduction Secrets," "Secret

Video," "Turn all women on after you watch this," etc. – all misrepresent *who* is advertising in

the spams. None of these From Names identify any Defendant or other related person.

136.    Plaintiffs are informed and believe and thereon allege that Defendants chose to display

sensational phrases like the ones above instead of their legitimate identities in the "From Name"

field not only to further disguise their identities, but also to entice recipients into opening their

spam, reading their advertisements, and ultimately making a purchase.

**D.  Spams With Sending Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)**

137.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email

headers. In *Balsam v. Trancos Inc. et al*, the Court of Appeal held:

> [W]here, as in this case, the commercial e-mailer intentionally uses . . . domain
> names in its headers that neither disclose the true sender's identity on their face
> nor permit the recipient to readily identify the sender, . . . such header information
> *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's
> identity. . . .
>
> Here, the domain names were *not* traceable to the actual sender. The header
> information is "falsified" or "misrepresented" because Trancos deliberately
> created it to prevent the recipient from identifying who actually sent the message.
> . . . . an e-mail with a made-up *and untraceable* domain name affirmatively *and
> falsely* represents the sender has no connection to Trancos.
>
> Allowing commercial e-mailers like Trancos to conceal themselves behind
> untraceable domain names amplifies the likelihood of Internet fraud and abuse—
> the very evils for which the Legislature found it necessary to regulate such e-
> mails when it passed the Anti-spam Law.
>
> We therefore hold, consistent with the trial court's ruling, that header information
> in a commercial e-mail is falsified or misrepresented for purposes of section
> 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual
> sender on its face *nor* is readily traceable to the sender using a publicly available
> online database such as WHOIS.

203 Cal. App. 4th 1083, 1097-1101 (1st Dist. 2012) (emphasis in original), *petition for review*

*denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiorari denied*, 2012 U.S.

LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S.

Jan. 7, 2013).

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8687

---

18

**COMPLAINT FOR DAMAGES**

138.    Plaintiffs received spams advertising Defendants that were sent from domain names deliberately registered so as to not be readily traceable to the sender, in violation of Section 17529.5.

139.    For example, the domain name *awarle.com* (used to send some of the spams at issue) is proxy-registered through Whois Privacy Protection Services Inc.  Therefore, it is not readily traceable to any Defendant or to any of Defendants' affiliates.

140.    Plaintiffs could not identify the entities that sent the spams form proxy-registered domain names by querying the Whois database for the domain names used to send the spams.

E.  **Spams With Falsified or Forged Send Dates Violate Business & Professions Code § 17529.5(a)(2)**

141.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email headers.

142.    The Send Date/Time fields are part of email headers.

143.    Many of the spams advertising Defendants have falsified Date/Time information in order to deceive recipients of their spam.

144.    For example, HENGFOSS received a spam advertising Defendants that on its face *purports* to have been sent on May 26, 2013, but in fact HENGFOSS *actually* received it on March 12, 2013, more than two months earlier.

145.    Plaintiffs are informed and believe and thereon allege that spammers falsify send dates – making spams appear as though they were sent in the future – because most email programs display the most recent email at the top of the inbox.  Therefore, falsifying a future send date is a materially deceptive means of forcing a spam to appear at the top of the list and stay at the top of the list, even as new emails come in, until the recipient deletes it, or the claimed date actually comes and goes.

146.    Every spam with a falsified or forged Send Date violates Section 17529.5(a)(2).

F.  **Spams With False Subject Lines Violate Business & Professions Code § 17529.5(a)(2)**

147.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email headers.

148.    Most, if not all, of the Defendants' spam advertisements contain Subject Lines that are materially deceptive.

WALTON TWU LLP
9515 Soquel Drive Suite #2017 • Aptos, CA 95003
PHONE (831)685-9800 •FAX (650)618-8987

WALTON TWU LLP

9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8687

149.    For example, the Subject Line "This video makes women want you" is false and contains misrepresented information because it implies that merely watching a video will make the recipient irresistible to women.

150.    In another example, the Subject Line "Makes girls horny (100% guaranteed)" is false and contains misrepresented information because it states that Defendants' product is *infallible* at making girls horny.

151.    In a third example, the Subject Line "How to control women's minds" is false and contains misrepresented information because it implies that Defendants' product gives one the ability to control the minds of women.

152.    In a fourth example, the Subject Line "Sleep with 6 girls in the next 6 days – guaranteed" is false and contains misrepresented information because Defendants' product cannot perform as advertised.

153.    These Subject Lines are additionally offensive to Plaintiffs who are women and/or love women.

## G. Spams With Misleading Subject Lines Violate Business & Professions Code § 17529.5(a)(3)

154.    Section 17529.5(a)(3) prohibits email Subject Lines that are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

155.    Many of the Defendants' spam advertisements contain Subject Lines that are misleading about the contents of the email advertising.

156.    For example, the Subject Line "This video makes women want you" is misleading because it implies that a video is attached to the email. There is no video, either attached to the email or available on the linked web site, that makes women "want" the recipient of the email.

157.    In another example, the Subject Line "How to control women's minds" is misleading because it implies that the email discusses methods of mind control. There is no method, either attached to the email or available on the linked web site, providing discussion about or instructions on mind control.

158.    In another example, the Subject Line "Congratulations! You Have Been Selected!" is misleading because it is so generic as to be meaningless; it does not relate in any way to the

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)585-0800 • FAX (650)618-4667

1    contents or subject matter of the message – a video that purportedly gives the viewer the keys to

2    the "desire center" of any woman's mind.

3    **H. Defendants are Strictly Liable for Spams Sent By Their Affiliates**

4    159.    Plaintiffs are informed and believe and thereon allege that all Defendants cooperated to

5    advertise in and send the unlawful spams at issue in this Action.

6    160.    Plaintiffs are informed and believe and thereon allege that no Defendant was required to

7    employ any other Defendant for the actions described in this Complaint.

8    161.    Advertisers are strictly liable for advertising in spams, regardless of whether the

9    advertiser knew that the spams were sent, and even if contracted third parties hit the Send button.

10   There is a need to regulate the advertisers who use spam, as well as the actual
11   spammers because the actual spammers can be difficult to track down due to
12   some return addresses that show up on the display as "unknown" and many others
     being obvious fakes and they are often located offshore.

13   The true beneficiaries of spam are the advertisers who benefit from the marketing
14   derived from the advertisements.

15   Bus. & Prof. Code § 17529(j), (k).

16   162.    No one forced Defendants to outsource any of their advertising to third party spammers,

17   and in *Hypertouch Inc. v. ValueClick Inc. et al*, the court held that advertisers are *strictly liable*

18   for advertising in false and deceptive spams, even if the spams were sent by third parties.

19   *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a
20   commercial e-mail advertisement" that contains any of the deceptive statements
     described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not
21   limited to entities that actually send or initiate a deceptive commercial e-mail, but
22   applies more broadly to any entity that advertises in those e-mails.

23   Thus, like other California statutes prohibiting false or misleading business
24   practices, the statute makes an entity *strictly liable* for advertising in a
     commercial e-mail that violates the substantive provisions described in section
25   17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails
     had been sent* or had any intent to deceive the recipient.
26

27   192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).  The court did not find that this

28   was an arbitrary requirement; rather, the court identified sound policy reasons behind the

29   Legislature's decision to create a strict liability statute:

30   [I]mposing strict liability on the advertisers who benefit from (and are the
31   ultimate cause of) deceptive e-mails, forces those entities to take a more active

---

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-4587

1   role in supervising the complex web of affiliates who are promoting their
2   products.

3   *Id.* at 829.  Nor was *Hypertouch* an anomaly; it confirmed the general trend in anti-spam
4   litigation in California and federal courts.

5   **I.   Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual
     Damages is Necessary; Defendants Actions Were Willful and Preclude any Reduction in
6     Statutory Damages**

7   163.   A recent study found that spam sent to end users in the United States costs about $20
8   *billion* annually.  These spams generated revenues of approximately $200 million, meaning that
9   the ratio of the cost of spam (to email users) to the benefits of spam (to the spammers) is about
10   100:1.  Justin Rao and David Reiley, *The Economics of Spam*, JOURNAL OF ECONOMIC
11   PERSPECTIVES 17 (Summer 2012).  Put another way, spammers' profits come at a relatively
12   enormous expense to society at large.

13   164.   Plaintiffs suffered damages by receiving the unlawful spams advertising Defendants'
14   products in the state of California, at their California email addresses.  *See* Bus. & Prof. Code
15   § 17529(d), (e), (g), (h).

16   165.   Plaintiffs, who cannot refuse to accept such mail, incur costs for the storage of such mail,
17   and for the time spent accessing, reviewing, and discarding such mail.

18   166.   Section 17529.5 does not require Plaintiffs to quantify their actual damages, or to allege
19   or prove reliance on the advertisements contained in the spams.

20   167.   The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. &
21   Prof. Code § 17529.5(b)(1)(B)(ii).

22   168.   Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is
23   comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory
24   damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

25   169.   Plaintiffs' rightful and lawful assertion of the California Legislature's liquidated damages
26   amount of $1,000 per email is necessary to further the Legislature's objective of protecting
27   California residents from unlawful spam.

28   170.   Plaintiffs are informed and believe and thereon allege that Defendants have not
29   established and implemented, with due care, practices and procedures reasonably designed to

30

31

1  effectively prevent unsolicited commercial e-mail advertisements that are in violation of

2  Business & Professions Code § 17529.5.

3  171.   Even if Defendants had any practices and procedures to prevent advertising in unlawful

4  spam, such practices and procedures were not reasonably designed so as to be effective.

5  172.   Even if Defendants reasonably designed practices and procedures to prevent advertising

6  in unlawful spam, such practices and procedures were not implemented so as to be effective.

7  173.   Moreover, Plaintiffs are informed and believe and thereon allege that Defendants

8  intended to deceive recipients of their spam messages through the use of falsified and/or

9  misrepresented information contained in or accompanying the email headers, as described

10  herein.

11  174.   Plaintiffs are informed and believe and thereon allege that Defendants went to great

12  lengths to falsify the information contained in and accompanying the email headers in order to

13  deceive recipients, Internet Service Providers, and spam filters.

14  175.   Plaintiffs are informed and believe and thereon allege that Defendants intended to profit,

15  actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct.

16  176.   Plaintiffs often received multiple identical or nearly identical spams advertising

17  Defendants' products every day; up to *30* per day.

18  177.   Punitive damages are appropriate to punish malicious, oppressive, and/or fraudulent

19  conduct by Defendants, and to deter others from engaging in such conduct.

20  **J.  Plaintiff JOEL FINK Sues for Actual Damages**

21  178.   In his Second Cause of Action against Defendants, Plaintiff FINK alleges that he spent

22  money out of pocket to purchase the advertised products, acting in reliance on the claims in

23  Defendants' advertising.

24  179.   No plaintiff seeks actual damages for receipt of the unsolicited commercial emails, but

25  Plaintiff FINK seeks actual damages for the amount he was defrauded through unauthorized

26  charges to his credit card.

27

28  **FIRST CAUSE OF ACTION**

29  **[Violations of California Restrictions on Unsolicited Commercial Email Advertisers,**
30  **California Business and Professions Code § 17529.5]**
   **(By All Plaintiffs Against All Defendants)**

31

WALTON TWU LLP
9515 Soquel Drive Suite #2207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-8687

23
COMPLAINT FOR DAMAGES

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (837) 685-9800 • FAX (650) 618-8687

180.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as if the same were fully set forth herein.

181.   Defendants sent, or caused to be sent, or advertised in, unsolicited commercial emails to California electronic mail addresses, including at least Nine Hundred Eighty Six (986) to Plaintiffs, containing or accompanied by falsified and/or misrepresentative header information, including:

- Third parties' domain names without permission
- False and Misleading Subject Lines
- Misrepresented Sender Names and email addresses
- Proxy-registered domain names
- Falsified Sending Dates stamps

182.   The emails were offensive as well as unlawful.

183.   Plaintiffs suffered damages as a result of Defendants' wrongful conduct.

184.   The California Legislature has set liquidated damages at One Thousand Dollars ($1,000) per email.

185.   Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by statute.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION

**[Violations of California Restrictions on Fraud (Cal. Civil Code § 1572)]**
**(By Plaintiff Joel Fink Against All Defendants)**

186.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as if the same were fully set forth herein.

187.   Defendants sent, or caused to be sent, or advertised in, unsolicited commercial emails to California electronic mail addresses, including to Plaintiff FINK, containing fraudulent statements regarding material facts about the products being offered.

188.   For example, the ad copy, "Did you know there are 3 simple words that make any girl want to F$CK You?" is fraudulent because it implies that Defendants know of three words that, when spoken, would make any girl want to F$CK Plaintiff FINK.

189.   Plaintiff FINK is informed and believes and thereon alleges that no such three words exist and that the videos and the web site do not provide any three words that make any girl want to FSCK Plaintiff FINK.

190.   In another example, the ad copy, "Scientists at Harvad [sic] University have discovered a strange secret that allows you to control women's minds" is fraudulent because it implies that Defendants know of a "secret" and "scientific" technique for controlling the minds of women.

191.   Plaintiff FINK is informed and believes that no such secret exists and that no scientist at *Harvard* University has discovered a strange secret that allows a person to control women's minds and that the videos and the web site do not provide any such "strange secret."

192.   Plaintiff FINK is informed and believes and thereon alleges that Defendants knowingly and deliberately made false statements about their product in order to deceive recipients of their spam into visiting their websites and ultimately making a purchase.

193.   Plaintiff FINK is informed and believes that consumers who click the link, visit the website, and purchase a product are charged significantly more money than represented in the original emails or at the web site where payment is requested.

194.   Plaintiff FINK purchased Defendants' product and suffered injury from Defendants' failure to disclose that the videos would not be available all at once, but would only be offered in pieces, requiring multiple visits to the web site.

195.   Plaintiff FINK relied upon false assertions in the advertising, including statements that the product was available for a *single* credit card payment of less than One Hundred Dollars ($100.00). Defendants did not inform Plaintiff FINK that he would be charged One Hundred Dollars ($100.00) *per month* for as long as he continued to download videos, nor that the videos would not be immediately available, until *after* he made the purchase. Plaintiff FINK is informed and believes and thereon alleges that this information – that there would be recurring credit card charges – is not contained in the terms & conditions or viewable on Defendants' websites at any time prior to purchase, or in any place *other* than within the videos themselves, which, of course, he could only view after paying.

196.   Plaintiff FINK is informed and believes and thereon alleges that Defendants market their video products as being sold for a single payment, when in fact Defendants intended to only make videos available over time, with recurring unauthorized credit card charges.

WALTON TWU LLP
9315 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831) 685-9800 • FAX (650) 618-4687

25
**COMPLAINT FOR DAMAGES**

1  197.   Plaintiff FINK seeks punitive damages in order to punish malicious, oppressive, and/or
2  fraudulent conduct by Defendants, and to deter others from engaging in such conduct.

**PRAYER FOR RELIEF**

**(Against All Defendants)**

A.   Liquidated damages in the amount of One Thousand Dollars ($1,000) for each of the
Nine Hundred Eighty Six (986) spams, as authorized by Cal. Business & Professions Code
§ 17529.5(b)(1)(B)(ii);

B.   Punitive Damages in the amount of Three Million Nine Hundred Forty Four Thousand
Dollars ($3,944,000.00);

C.   Plaintiff JOEL FINK seeks actual damages in an amount to be determined by the Court;

D.   Attorneys' fees, as authorized by Cal. Business & Professions Code § 17529(b)(2)) and
Code of Civil Procedure § 1021.5;

E.   Costs of suit; and

F.   Such other and further relief as the Court deems proper.

WALTON TWU LLP

Date:_____ July 10, 2013_____    BY:_____
TIMOTHY J. WALTON
Attorneys for Plaintiffs

WALTON TWU LLP
9515 Soquel Drive Suite #207 • Aptos, CA 95003
PHONE (831)685-9800 • FAX (650)618-4687