1  Leeor Neta, State Bar No. 233454
2  leeor@newmanlaw.com
   NEWMAN DU WORS LLP
3  150 California Street, Suite 2100
   San Francisco, CA 94111
4  Telephone:   (415) 944-5424
   Facsimile:    (415) 944-5423
5
6  Attorneys for Defendants

7  Timothy J. Walton, State Bar No. 184292
   Jim C. Twu, State Bar 175032
8  WALTON TWU LLP
   9515 Soquel Drive, Suite #207
9  Aptos, CA 95003
   Telephone:   (831) 685-9800
10 Facsimile:    (650) 618-8687
11
   Attorneys for Plaintiffs
12

13

14              **UNITED STATES DISTRICT COURT**
15             **NORTHERN DISTRICT OF CALIFORNIA**
                   **SAN JOSE DIVISION**
16

17 JOEL FINK, an individual, et al.,          No. C13-03720-EJD (HRL)
18
             Plaintiffs,                       **JOINT CASE MANAGEMENT**
19                                             **STATEMENT AND [PROPOSED]**
                                               **ORDER**
20      v.

21                                             The Honorable Edward J. Davila
   ALTARE PUBLISHING, INC., a New              Hearing Date:  December 6, 2013
22 Jersey corporation, et al.,                 Time:  9:00 a.m.
                                               Location:  Courtroom 4 - 5th Floor
23           Defendants.

24

25

26      The parties to the above-entitled action jointly submit this JOINT CASE

27 MANAGEMENT STATEMENT AND [PROPOSED] ORDER pursuant to the

28 Standing Order for All Judges of the Northern District of California dated July 1, 2011 and

1  Civil Local Rule 16-9.

2  **JOINT CASE MANAGEMENT STATEMENT**

3  **1.  <u>Jurisdiction and Service</u>**:

4  Plaintiffs have not yet served Defendants Gerald M. Gresko, Judith A. Gresko or

5  Namecheap, Inc. The parties agree that Gerald and Judith Gresko have no connection to

6  the conduct alleged in the complaint. They are domiciled in Pennsylvania and lack

7  sufficient contacts with California. As such, this Court lacks personal jurisdiction over

8  them. The parties disagree about whether Namecheap is fraudulently joined and thus

9  whether the Court has subject matter jurisdiction over Plaintiffs' claims.

10  <u>Plaintiffs' Position</u>

11  Plaintiffs do not believe that this Court may exercise subject matter jurisdiction

12  because the only alleged basis for federal jurisdiction is diversity and all of the Plaintiffs

13  and one of the Defendants—Namecheap, Inc.—are citizens of California. Plaintiffs have

14  moved to remand and the hearing on the motion is set for January 31, 2014.

15  <u>Defendants' Position</u>

16  This Court has original jurisdiction. Plaintiffs accuse Defendants of advertising in

17  and sending thousands of unwanted commercial emails. Plaintiffs do not dispute that they

18  are all California citizens and that most of the Defendants are not. Nor do Plaintiffs'

19  dispute that the jurisdictional amount-in-controversy requirement is met.

20  Plaintiffs' motion for remand is predicated on the citizenship and alleged liability

21  of just one Defendant: Namecheap, Inc. Plaintiffs dismissed with prejudice two other

22  purported California defendants after being threatened with a motion for sanctions.

23  Plaintiffs allege that Namecheap is a citizen of California but relies on an abrogated test

24  for determining citizenship and factors that speak to residence, not citizenship. In fact,

25  according to the U.S. Supreme Court's test for determining principal place of business,

26  Namecheap is a citizen of the State of Delaware and the Ukraine.

27  Plaintiffs also allege that Namecheap is liable because it operates under the

28  fictitious name of "WhoisGuard" and some of the emails at issue were sent from a

domain name registered to WhoisGuard. But WhoisGuard is not a fictitious business name. In fact, WhoisGuard is a separate and distinct Panamanian corporation that provides anonymous services to Namecheap's customers by agreement with Namecheap. As such, Namecheap is fraudulently joined and Plaintiffs' allegations to the contrary are entitled no deference.

Defendant Namecheap should be ignored for the further reason that Plaintiffs never served it prior to removal. Alternatively, this Court should sever Plaintiffs' claims with respect to Namecheap and remand them to state court.

**2.  Facts**:

Plaintiffs' Position

Plaintiffs allege that Defendants sent them email advertising with false or deceptive header information, including subject lines. Plaintiffs did not request such advertising. The factual issues in dispute include whether Defendants sent the commercial email or hired someone to send the commercial email and whether a reasonable person would be misled about the nature of the advertising and the claims made in that regard.

Defendants' Position

Defendant Altare Publishing, Inc. provides legitimate dating information products and services. (Dkt. 10, ¶ 2.) The Pandora's Box System is Altare Publishing's flagship product. (*Id*.) It includes a series of videos containing dating and relationship advice. (*Id*.) The product is not "adult" in nature. (*Id*.) The Pandora's Box System is endorsed by Dr. Robert Epstein (Harvard University, 1981), Founder and Director Emeritus of the Cambridge Center for Behavioral Studies. (*See* Dkt. 10, Ex. A.)

Defendant Ryan Kowalski is the President of Altare Publishing. (Dkt. 10 at ¶ 4.) Defendant Kristen Kowalski is its Vice President. (*Id*.) A fourth Defendant—Vin DiCarlo—is a mere pen name previously used by Ryan Kowalski to author dating advice products. (*Id*.) The remaining DiCarlo Defendants—including Vin DiCarlo, Inc. (incorporated in Massachusetts); Vin DiCarlo, Inc. (incorporated in New Jersey); Vin

1    DiCarlo II Incorporated (incorporated in New Jersey); DiCarlo Coaching; and DiCarlo

2    Coaching LLC are prior iterations of Altare Publishing. (*Id*.) In 2011, because Ryan

3    Kowalski began to broaden the scope of his products to include fitness advice and more

4    general relationship advice, he changed the name of Vin DiCarlo, Inc. to Altare

5    Publishing, Inc. (*Id*.)

6        Altare Publishing maintains a list of email addresses to which it promotes products

7    and services. (Dkt. 10 at ¶ 5.) This list contains only those addresses belonging to

8    individuals who have already purchased Altare Publishing's products. (*Id*.) Altare

9    Publishing also partners with certain affiliates to advertise and promote its products. (*See*

10   Dkt. 10, Ex. B.) But Altare Publishing requires that its affiliates agree not to send

11   unwanted commercial email and warrant that they will not violate associated statutes and

12   laws, including the CAN-SPAM Act of 2003. (*See id*.) Altare Publishing also requires that

13   its affiliates agree not to send unsolicited commercial email and indemnify Altare

14   Publishing from any claims to the contrary. (*See id*.) It is believed that the emails at issue

15   in this action were not authored by the Altare Publishing Defendants.

16       Plaintiffs complain that they each received an average of 66 emails, each of which

17   they claim violate Section 17529.5. (*See* Prayer for Relief.) They believe that these emails

18   entitle them to $986,000 in statutory damages, not to mention attorneys' fees and costs

19   of suit. (*Id*.) Plaintiffs also seek $3,944,000 in punitive damages. (*Id*.) Only one Plaintiff—

20   Joel Fink—alleges actual damages resulting from his purchase of the Pandora's Box

21   System. (*Id*.)

22       Plaintiffs allege that one of them received an email from an address containing the

23   "yahoo.com" domain name without Yahoo!, Inc.'s permission. (Complaint at ¶¶ 129-

24   130.) Plaintiffs contend that one of the emails at issue was sent from a domain name that

25   is not traceable to any of the Defendants or their affiliates. (*Id*. at ¶ 139.) Plaintiffs

26   complain that one of the emails at issue contains an incorrect send date. (*Id*. at ¶ 144.)

27   Plaintiffs also allege that some of the "from" lines in the emails at issue do not identify a

28   specific person or entity. (*Id*. at ¶ 135.) Finally, Plaintiffs complain that the puffery

contained in the subject lines of some of the emails at issue—e.g., "This video makes women want you"—is false or materially misleading to objectively reasonable recipients. (*Id*. at ¶¶ 147-158.)

Although Plaintiffs allege that they received multiple unwanted commercial email messages, they provide an example of only one with their Complaint. (Complaint at p. 14.) This single email does not mention any of the Defendants, their brands, addresses or any goods or services sold or provided by them. (*Id*.) Plaintiffs have produced no information or evidence that the email was sent by Defendants, was sent on their behalf, promotes their goods or services, or includes a link that is any way related to Defendants. The body of the email contains a prominent "unsubscribe" link, allowing the recipient to decline to receive future commercial emails. (*Id*.)

Plaintiff Joel Fink is the only party to allege actual fraud. (*See* Second Cause of Action.) His damages are predicated on the purchase of the Pandora's Box System. (*See id*.) But Plaintiff Fink does not allege the time, place or manner of any alleged misrepresentations or consequent actions. (*See id*.) With the exception of Plaintiff Fink who alleges actual damages, none of the Plaintiffs allege that they were deceived by any of the emails at issue. Nor do they allege that they relied on them in any way or were harmed in doing so.

**3.** <u>Legal Issues</u>:

<u>Plaintiffs' Position</u>

Plaintiffs rely upon California Business & Professions Code Section 17529.5 and case law interpreting that statute, including *Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083 and *Hypertouch, Inc. v. Valueclick, Inc.* (2011) 192 Cal.App.4th 805. Defendants assert preemption of that statute by operation of federal law, specifically the CAN-SPAM ACT of 2003 at 15 U.S.C. 7707. Plaintiffs believe that the California statute falls within the exemption to preemption (Section 7707(c)) and rely upon numerous federal and state cases, including but not limited to *Gordon v. Virtumundo, Inc.* (2009) 575 F.3d 1040, *Asis Internet Services v. Vistaprint USA Inc.* (2009) 617 F.Supp.2d 989, and *Asis*

1   *Internet v. Consumerbargaingiveaways.com, LLC* (2009) 622 F.Supp.2d 935.

2      <u>Defendants' Position</u>

3      Plaintiffs allege that they received 986 emails violating Section 17529.5 of

4 California's Business and Professions Code. And they demand $1,000 per email from

5 Defendants. They are also seeking attorneys' fees and nearly $4 million in punitive

6 damages. Their claims are based on alleged hyper-technical errors in email headers. But

7 Plaintiffs did not rely on any allegedly false information in any email, nor did they suffer

8 damages.

9      Plaintiffs do not state a cause of action because the Ninth Circuit has found that

10 the federal CAN-SPAM Act preempts their claims. In an identical case, the Honorable

11 Phyllis J. Hamilton of the Northern District of California dismissed all claims with

12 prejudice. Plaintiffs have not even alleged a claim under the inconsistent state authority

13 they cite. This Court should follow binding Ninth Circuit precedent—and Judge

14 Hamilton—and dismiss this case with prejudice.

15      **4. <u>Motions</u>**

16      On August 19, 2013, Defendants filed a Motion to Dismiss pursuant to Fed. R.

17 Civ. P. 12(b)(6). The Motion to Dismiss is fully briefed.

18      On September 4, 2013, Plaintiffs filed a Motion to Remand. Defendants filed a

19 timely opposition. Plaintiffs never replied.

20      On November 11, 2013, Defendants filed a Motion for Sanctions pursuant to Fed.

21 R. Civ. P. 11. Plaintiffs filed a timely opposition on November 25. Defendants will file a

22 timely reply on December 2.

23      All three motions are due to be heard on January 31, 2014 at 9:00 a.m.

24      It is too early to determine whether either party will file any additional motions.

25      **5. <u>Amendment of Pleadings</u>**

26      Plaintiffs do not intend to further amend their Complaint at this time. If the matter

27 is not dismissed with prejudice upon Defendants' potentially case-dispositive Motion to

28 Dismiss, Plaintiffs will reassess the need to amend their Complaint at that time.

1    **6. Evidence Preservation**

2        The parties have reviewed the Guidelines Relating to the Discovery of

3    Electronically Stored Information ("ESI Guidelines"). The parties confirm that they

4    have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and

5    proportionate steps taken to preserve evidence relevant to the issues reasonably evident

6    in this action. The parties are committed to cooperating with the production of ESI in the

7    most efficient and least burdensome manner as the nature and scope of such productions

8    becomes better defined.

9    **7. Disclosures**

10       The parties will exchange initial disclosures by December 4, 2013. In addition to

11   the required disclosures, Plaintiffs have agreed to produce the emails at issue in a format

12   agreed upon by the parties. Plaintiffs have also agreed to produce the email addresses at

13   which the emails in question were received.

14   **8. Discovery**

15       The parties are cooperating in an effort to informally produce information and

16   documents. The parties anticipate that the Court's decision on Defendants' Motion to

17   Dismiss may provide them with important guidance about the scope of the legal and

18   factual issues actually in dispute. The parties believe that such guidance will inform what

19   discovery is necessary. At present, the parties see no reason to deviate from the limits set

20   forth under the Federal Rules of Civil Procedure on depositions or written discovery. The

21   parties have not yet considered entering into a stipulated e-discovery order. But the

22   parties have agreed to serve discovery requests and responses—including documents—in

23   an electronic format whenever feasible.

24       The parties have agreed that all depositions will be scheduled by agreement (no

25   unilateral notices). The parties have also agreed that all discovery disputes will be

26   discussed first by phone call between counsel, and only via letter if the informal meet and

27   confer effort fails to resolve the issue(s). Thus far, the parties have encountered only one

28   potential discovery dispute. Plaintiff Joel Fink is the only claimant alleged to have

purchased a product advertised in the emails at issue. Defendants intend to ask Plaintiff Fink why he purchased the advertised product. Counsel for Plaintiffs has indicated his intention to object to this inquiry on privilege grounds. But Plaintiff's counsel has also agreed to submit Plaintiff Fink's response to in camera inspection.

**9. Class Actions**

This is not a class action.

**10. Related Cases**

There are no related cases.

**11. Relief**

All Plaintiffs seek:

(1) Statutory damages under Cal. Bus. & Prof. Code § 17529.5 in the amount of $1,000 for each of 986 emails at issue, or $986,000;

(2) Punitive damages in the amount of $3,944,000;

(3) Attorneys' fees under Cal. Bus. & Prof. Code, § 17529.5, and Cal. Code Civ. Proc., § 1021.5.

(4) Costs of suit;

(5) Such other and further relief as the Court deems proper.

In addition, Plaintiff Joel Fink seeks actual damages in an amount to be determined by the Court.

**12. Settlement and ADR**

The parties discussed settlement prior to and following the filing of this case. The possible terms of settlement are understood by the parties. Pursuant to ADR Local Rule 3-5, the parties have reviewed the ADR Handbook, discussed it with their counsel, and come to the conclusion that private mediation may deliver benefits sufficient to justify the resources committed to its use. However, the parties see little benefit in participating in mediation before the Court rules on Defendants' potentially dispositive Motion to Dismiss and the parties exchange written discovery.

**13. Consent to Magistrate Judge For All Purposes**

1   The parties have declined to consent to proceed before a Magistrate Judge for all

2   purposes.

3   **14. <u>Other References</u>**

4   The parties do not believe that this case is suitable for reference to binding

5   arbitration, special master, or the Judicial Panel on Multidistrict Litigation.

6   **15. <u>Narrowing of Issues</u>**

7   The parties do not believe that it is possible to narrow the issues at this time. A

8   partial motion for summary judgment may limit the issues prior to trial.

9   **16. <u>Expedited Trial Procedure</u>**

10  The parties do not believe that this case is appropriate to be handled under the

11  Expedited Trial Procedure of General Order 64.

12  **17. <u>Scheduling</u>**

13  In light of the pending Motion to Dismiss, it is premature at this time for the

14  parties to discuss scheduling issues, including scheduling issues related to discovery in

15  this action. A more efficient approach would be to discuss scheduling, if necessary,

16  following the Court's ruling on the pending Motion to Dismiss. At a minimum,

17  Defendants should not be ordered to answer Plaintiff's Complaint until the Court rules

18  on their potentially dispositive motion.

19  **18. <u>Trial</u>**

20  This case will be a jury trial. While it is difficult to estimate the expected length of

21  the trial at this point. The parties expect that trial will require at least three (3) court days.

22  **19. <u>Disclosure of Non-party Interested Entities or Persons</u>**: On November 25,

23  2013, Defendants filed their "Certification of Interested Entities or Persons." Pursuant to

24  Civil L.R. 3-16, Defendants—by and through their counsel—certify that as of that date,

25  other than the named parties, there is no such interest to report. Plaintiffs will file their

26  "Certification of Interested Entities or Persons" within the next ten days.

27  **20. <u>Other Matters</u>**

28  By signing this Joint Case Management Statement and [Proposed] Order, the

counsel for each party listed below concur in its filing. This document is being filed through the Electronic Case Filing (ECF) system by attorney Leeor Neta of Newman Du Wors LLP. By his signature, he attests that the Defendants have obtained concurrence in the filing of this document from each counsel signing the stipulation, pursuant to Civil Local Rule 5-1(i)(3).

Respectfully submitted this 26th day of November 2013.

**NEWMAN DU WORS LLP**

Leeor Neta (State Bar No. 233454)

Attorneys for Defendants
Altare Publishing, Inc.; "Vin DiCarlo, Inc."; "Vin DiCarlo II, Inc."; Vin DiCarlo III, Inc. (sued as "Vin DiCarlo, Inc."); "DiCarlo Coaching"; "DiCarlo Coaching LLC"; "Vin DiCarlo"; Ryan Dennis Kowalski; and Kristen Sara Kowalski

WALTON TWU LLP

Timothy Walton (State Bar No. 184292)

Attorneys for Plaintiffs
Joel Fink, George Moreland, Ken green, Mildred Green, Jesse Brister, Julianna Hengfoss, Jamie Carper, Mario Osoteo, Daniel Barrett, Steve Falls, Serene Pritchett, Angela Kim Bridges, Kristina Kirby, Cathy Riley and Auria Styles

1       **CASE MANAGEMENT ORDER**

2              The above JOINT CASE MANAGEMENT STATEMENT AND PROPOSED

3       ORDER is approved as the Case Management Order for this case and all parties shall

4       comply with its provisions. [In addition, the Court makes the further orders stated below:

5       _____

6       _____

7       _____

8       _____

9       _____

10      _____

11      _____

12      _____

13      _____

14      _____

15      _____

16      _____

17      _____

18      _____

19      _____

20      _____

21      _____

22      _____

23      _____]

24

25            IT IS SO ORDERED.

26

27      Dated: _____        _____

28                                   UNITED STATES DISTRICT JUDGE

2
**JOINT CASE MANAGEMENT STATEMENT AND ORDER—C13-03720-EJD (HRL)**